**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Jackson C. O'DELL, III,**
**Defendant–Appellee.**

No. 96–6733.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 5, 1998.

Decided Aug. 31, 1998.

Steve H. Cook, Asst. U.S. Attorney (argued and briefed), Office of U.S. Attorney, Knoxville, TN, for Plaintiff–Appellant.

Herbert S. Moncier (briefed), David S. Wigler (argued and briefed), Knoxville, TN, for Defendant–Appellee.

Before: MERRITT, KENNEDY, and GILMAN, Circuit Judges.

## OPINION

KENNEDY, Circuit Judge.

The United States appeals the District Court's dismissal with prejudice under the Speedy Trial Act (hereinafter "STA"), 18 U.S.C. §§ 3161–3174, of two counts of a four-count indictment against defendant Jackson C. O'Dell III (hereinafter "O'Dell"). The District Court held that ninety-three days of nonexcludable delay had elapsed, exceeding the STA's seventy day limit. Sixty-three of those days elapsed during proceedings on a prior information filed against O'Dell in 1993. Because a not guilty plea was never entered as required by the STA's plain language, we hold that the District Court improperly included those sixty-three days in its calculation of nonexcludable delay After these sixty-three days are removed, fewer than seventy days of nonexcludable delay remain. Thus, the STA was not violated and we REVERSE the District Court's dismissal of the two counts against O'Dell and REMAND for further proceedings consistent with this opinion.

## I. Facts and Procedural History

In a search of O'Dell's farm in 1991, the United States found an indoor marijuana growing operation consisting of plants in various stages of development, additional harvested plants, seeds, and a sawed-off shotgun. A search of O'Dell's residence revealed documents linking O'Dell to the farm, a scale, a copy of High Times magazine, and thirty-five weapons. The United States also implicated O'Dell's father and sons in the marijuana manufacturing operation.

On August 19, 1991, the United States filed civil forfeiture actions against O'Dell's farm and residence. At approximately the same time, the United States and O'Dell began negotiations to resolve O'Dell's criminal liability. Lengthy plea negotiations appeared to succeed. On July 30, 1993, O'Dell waived his right to an indictment and consented to the entry of a one-count information charging him with manufacturing marijuana (hereinafter the "1993 case"). On November 8, 1993, O'Dell entered into a written plea agreement with the government, was arraigned, and entered a guilty plea to the one-count information charging him with the manufacture of marijuana.

Among other things, the plea agreement required that O'Dell's father and sons enter guilty pleas in state court to state charges related to their roles in the marijuana manufacturing operation. When they did not enter those pleas, the United States filed a notice with the District Court informing it that the terms of the plea agreement had been breached and the agreement no longer bound the government. In response, O'Dell argued that the District Court should enforce the plea agreement. After the District Court held that it could not enforce the plea agreement against the government, O'Dell moved for reconsideration, or in the alternative, to withdraw his guilty plea. On August 11, 1994, the District Court entered an order denying O'Dell's motion for reconsideration, withdrawing O'Dell's guilty plea, and setting the case for trial to begin on October 20, 1994. At this point, the only charging instrument before the court was the one-count information. On October 13, 1994, O'Dell filed motions with the District Court concerning the imminent trial. On October 17, 1994, the United States filed a motion to dismiss the information; the District Court granted the motion to dismiss the 1993 case without prejudice on October 25, 1994.

On December 6, 1994, a grand jury returned a four-count indictment against O'Dell based on the same alleged marijuana manufacturing operation as in the 1993 case (hereinafter the "1994 case"). The first three counts charged O'Dell with (1) possessing marijuana with intent to distribute, (2) manu-

facturing marijuana, and (3) providing an enclosure for the purpose of unlawfully manufacturing and storing marijuana. Count Four sought forfeiture of properties used in drug-trafficking activities pursuant to 21 U.S.C. § 853.[1] O'Dell was arraigned and entered a not guilty plea to the four-count indictment on January 3, 1995.

Pretrial discovery, motions, and an interlocutory appeal occupied the next twenty-plus months. On October 21, 1996, the defendant moved to dismiss the four counts against him based on the STA. After the Magistrate Judge recommended dismissal with prejudice of all four counts for violation of the STA, the District Court held that ninety-three days of nonexcludable delay elapsed with respect to Counts Two (manufacturing marijuana) and Three (providing an enclosure for the purpose of unlawfully manufacturing and storing marijuana) and dismissed Counts Two and Three with prejudice. The District Court found that sixty-three of those days elapsed during proceedings in the 1993 case; the remaining thirty days elapsed during the 1994 case. The United States appealed the dismissal of Counts Two and Three.

## II. Discussion

■ We review the District Court's legal interpretation of the STA de novo and the factual findings supporting its ruling for clear error. *See United States v. Carroll,* 26 F.3d 1380, 1390 (6th Cir.1994). We have jurisdiction over this appeal pursuant to 18 U.S.C. § 3731, which provides that the government may appeal the dismissal of all or part of an indictment.

The STA "requires dismissal of a criminal case, with or without prejudice, if the defendant is not tried seventy days after his indictment or the date he first appears in court, whichever date last occurs." *United States v. Jenkins,* 92 F.3d 430, 438 (6th Cir. 1996), *cert. denied,* ── U.S. ──, 117 S.Ct. 1436, 137 L.Ed.2d 543 (1997). The seventy-

day deadline is not absolute; 18 U.S.C. § 3161(h) excludes certain periods of delay from the seventy-day calculation. *See, e.g., United States v. Mentz,* 840 F.2d 315, 325 (6th Cir.1988).

The District Court held that sixty-three days ran off of O'Dell's STA clock[2] during the 1993 case after O'Dell withdrew his guilty plea. The District Court carried those sixty-three days from the 1993 case over to the current case against O'Dell pursuant to 18 U.S.C. § 3161(h)(6). The government argues that because a not guilty plea was never entered during the 1993 case, the STA was not triggered and no time ran off O'Dell's STA clock during the 1993 case.

■ The plain meaning of the language of the STA requires a not guilty plea to begin the clock running. Section 3161(c)(1) provides:

> *In any case in which a plea of not guilty is entered,* the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1) (emphasis added).

■ The legislative history reveals that the purpose of the not guilty plea requirement is to conserve judicial resources by avoiding unnecessary trial scheduling in cases where it is more likely that the defendant will plead guilty or nolo contendere.

> The purpose of the amendment is to begin the running of the time limits from a logical point in the proceedings. At arraignment, the defendant is required to plead to the charge contained in an information or indictment. The Department pointed out that it would be a waste of judicial resources to require the courts to schedule

---

1. Earlier, the United States had moved to have the civil forfeiture claims against O'Dell's farm and residence dismissed without prejudice. The District Court dismissed the claims with prejudice.

2. We, like many other courts, will use the metaphor of a clock to keep track of periods of delay under the STA. *See, e.g., United States v. Rodriguez,* 63 F.3d 1159, 1162 (1st Cir.1995) (noting use of the clock metaphor under the STA).

trials at the time of the filing of an indictment, due to the possibility that the defendant may choose to plead either guilty or nolo contendere, thus making trial unnecessary.

H.R. REP. No. 93–1508, at 30 (1974), reprinted in 1974 U.S.C.C.A.N. 7401, 7423. Requiring a not guilty plea also serves to conserve prosecutorial resources; a prosecutor need not prepare for a potential trial until the defendant has entered a not guilty plea.

Other courts have also held that the plain language of § 3161(c)(1) requires a not guilty plea to trigger the STA. In *United States v. Tootle*, 65 F.3d 381 (4th Cir.1995), the defendant was indicted and made an initial appearance at which he did not enter a plea of not guilty. Plea negotiations ensued, and the defendant agreed to a proposed plea agreement. However, the parties never filed the plea agreement. The district court set a date for the defendant's trial and arraignment, comporting with the "improvident" and "rather unconventional practice in the Eastern District of North Carolina to arraign defendants on the first day of trial." *Id.* at 383 & n. 2. Before trial, the district court dismissed the indictment under the STA. The Fourth Circuit reversed and held that "[u]nder the plain language of § 3161(c)(1), unless a defendant has entered a plea of not guilty, the provisions of that section have not been triggered." *Id.* at 383.

*United States v. Nixon*, 779 F.2d 126 (2d Cir.1985) also supports our position. The defendant in *Nixon* first appeared before the court unrepresented by counsel and did not enter a plea. He appeared a week later with counsel and entered a plea of not guilty. The court held that the latter appearance started the STA clock because "the statute expressly applies only to cases in which pleas of not guilty have been entered." *Id.* at 130. The court also stated that "[a]n examination of the relevant legislative history reveals that the statutory period was intended to begin only after an appearance at which a not guilty plea has been entered. Congress believed it would be wasteful to require the government to begin planning for trial when it was still possible that a defendant might plead guilty or nolo contendere." *Id.*

Some of the authority relied upon by the District Court and O'Dell is distinguishable. The District Court cited *United States v. Ramos*, 588 F.Supp. 1223 (S.D.N.Y.1984), *aff'd without opinion*, 779 F.2d 37 (2d Cir. 1985) to support its conclusions that O'Dell's withdrawal of his guilty plea triggered the STA. In *Ramos*, the government filed a complaint against the defendant. The defendant was arrested and arraigned. While the court does not report whether the defendant pled not guilty at that arraignment, this seems like a reasonable inference given the definition of arraignment and the subsequent plea negotiations. *See* FED.R.CRIM.P. 10 ("Arraignment ... shall consist of reading the indictment or information to the defendant or stating to the defendant the substance of the charge and calling on the defendant to plead thereto."). Later, the defendant entered a plea of guilty to a subsequent information. Then, the defendant withdrew her plea. The defendant was later indicted on related charges and pled not guilty.

The *Ramos* district court, relying on 18 U.S.C. § 3161(i), held that the STA clock started to run at the time of the withdrawal of the guilty plea. *See id.* at 1226; *see also* 18 U.S.C. § 3161(i) (providing that when a defendant withdraws a plea of guilty, "the defendant shall be deemed indicted with respect to all charges therein contained ... on the day the order permitting withdrawal of the plea becomes final"). While the court neither noted nor analyzed the language of § 3161(c)(1), its analysis was consistent with the plain meaning of that section if the defendant pled not guilty at her initial arraignment. Section 3161(i) does not establish the day the defendant is "deemed indicted" as the day that the STA clock necessarily starts. Rather, that determination is still made based on § 3161(c)(1), which contains the language requiring a not guilty plea. As the Ninth Circuit has noted, "[the defendant's] reading of the statute overlooks the interaction between § 3161(c)(1) and 3161(i). Section 3161(i) does not replace section 3161(c)(1) when a defendant withdraws a guilty plea; it merely reestablishes the indictment date for the purposes of section 3161." *United States v. Wickham*, 30 F.3d 1252, 1254 (9th Cir.1994).

The District Court and the defendant also rely on *United States v. Bigler,* 810 F.2d 1317 (5th Cir.1987). In *Bigler,* the defendant was indicted. *See id.* at 1318. He was arraigned and entered a guilty plea. He then withdrew his guilty plea. After completion of state prosecution against the defendant, the defendant was arraigned again and pled not guilty. The court held that the seventy day STA clock started when the defendant withdrew his guilty plea. *See id.* at 1319. While *Bigler* supports the defendant's argument, we disagree with its conclusion because its reasoning conflicts with the plain meaning of the STA's statutory language.

The defendant also argues that he in effect did enter a not guilty plea in the instant case because the government, the defendant, and the court all knew that O'Dell intended to proceed to trial at the time when his guilty plea was withdrawn. The defendant on appeal, and the District Court in its opinion, distinguish *Tootle* and *Nixon* by noting that in those cases it was not clear to the courts and the government that the defendant would proceed to trial.

■ The defendant's arguments cannot overcome the plain meaning of the statutory language. We refuse to second guess Congress's choice of a brightline, unqualified requirement of a not guilty plea. Because the plain meaning of the statutory language requires a not guilty plea and O'Dell did not enter one nor was one entered for him during the 1993 case, we hold that the STA clock was not triggered during the 1993 case. Thus, the District Court incorrectly held that sixty-three days of nonexcludable time elapsed during the 1993 case. Removing these sixty-three days from the STA clock leaves only thirty days at issue. We need not address the government's alternative arguments with respect to why those thirty days are excludable.

### III. Conclusion

For the foregoing reasons, we REVERSE and REMAND for further proceedings consistent with this opinion.