RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0065P (6th Cir.)
File Name: 03a0065p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

  *v.*

JACKSON C. O'DELL, III,
   *Defendant-Appellant.*

No. 01-6195

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 94-00164—R. Leon Jordan, District Judge.

Argued: January 29, 2003

Decided and Filed: February 27, 2003

Before: NELSON and CLAY, Circuit Judges; HAYNES,
District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Herbert S. Moncier, LAW OFFICES OF
HERBERT S. MONCIER, Knoxville, Tennessee, for
Appellant. D. Gregory Weddle, ASSISTANT UNITED

---

[*] The Honorable William J. Haynes, Jr., United States District Judge
for the Middle District of Tennessee, sitting by designation.

1

STATES ATTORNEY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Herbert S. Moncier, David S. Wigler, LAW OFFICES OF HERBERT S. MONCIER, Knoxville, Tennessee, for Appellant.    Steve Hollingshead-Cook, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee.

CLAY, J., delivered the opinion of the court, in which HAYNES, D. J., joined.  NELSON, J. (p. 14), delivered a separate concurring opinion.

---

## OPINION

---

CLAY, Circuit Judge.  Appellant Jackson C. O'Dell, III, appeals from an order sentencing him to a mandatory minimum sixty months imprisonment for possession of marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and manufacture of marijuana, also in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). We **AFFIRM**.

### BACKGROUND

On August 15, 1991, agents from the Drug Enforcement Administration, Internal Revenue Service Criminal Investigation Division, Tennessee Bureau of Investigation, and several other law enforcement agencies executed federal search warrants at O'Dell's properties in Monroe County, Tennessee. Entering the first property, O'Dell's farm, agents discovered a barn that housed a "sophisticated marijuana growing operation." (J.A. at 44.) The district court described "three growing rooms containing over 100 marijuana plants." (*Id*.) Agents actually seized 203 plants. The marijuana had a wholesale value of approximately $406,000. O'Dell does not dispute that the plants belonged to him.

Agents also discovered one large bag of harvested marijuana plants. In a nearby residential structure occupied

---

**CONCURRENCE**

---

DAVID A. NELSON, Circuit Judge, concurring. I agree that the remand in *O'Dell IV* was limited rather than general. I write separately, however, to note that were it to be held that the remand was general rather than limited, it would make no difference to the result in this case. The motions that Mr. O'Dell filed in the district court on the day of his sentencing – pleadings styled "Defendant's Motion for Downward Departure" and "Motion to Resentence Within Constitutional Protections of Fifth Amendment Due Process and Eighth Amendment Protections" – could not properly have been granted in any event.

As to the request for a downward departure, it is clear that O'Dell was subject to a mandatory minimum five-year sentence under 21 U.S.C. § 841(b)(1)(B). It is equally clear that he could not claim the benefit of any statutory exception to the five-year mandate. This being so, the district court had no power to depart from the requirements of the statute. See *United States v. Burke*, 237 F.3d 741, 745 (6th Cir. 2001):

> "In the absence of one of the exceptions set out in [18 U.S.C.] §§ 3553(e), (f), or such other similar exceptions as Congress may create, defendants may not be sentenced, by means of a downward departure, to a term of imprisonment or other punishment below the minimum imposed by the statute under which they were convicted."

As to the constitutional claim, under the facts of this case, the notion that a five-year sentence was somehow unconstitutional strikes me as frivolous.

by O'Dell's father, Jackson C. O'Dell, Jr., officers located marijuana seeds and firearms. Agents found O'Dell at the barn when they arrived. Searching his person revealed a pilot's license and information sheets related to the special light bulbs used to grow marijuana.

The law enforcement officers simultaneously executed the second warrant at O'Dell's residence. There, officers discovered various other items linking O'Dell to marijuana cultivation: *High Times* magazines, marijuana seeds, triple-beam balance scales, books describing how to cultivate marijuana, and receipts, pamphlets and sales brochures for marijuana seeds and growing equipment. Officers also found five firearms, including high-powered rifles, handguns, and shotguns. Finally, the government discovered flight maps to Central America and a ledger book that apparently documented several cocaine smuggling trips.

A one-count information was filed against O'Dell on July 30, 1993, after O'Dell agreed to waive indictment and plead guilty. That information charged O'Dell with manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1). The information also cited the applicable penalty provision, 21 U.S.C. § 841(b)(1)(B).

On November 8, 1993, O'Dell agreed to plead guilty to the information pursuant to a plea agreement in which he agreed his offense was punishable under 21 U.S.C. § 841(b)(1)(B). The Probation Office then prepared a presentence report also stating that there was a minimum mandatory sentence of five to forty years pursuant to 21 U.S.C. § 841(b)(1)(B). The Presentence Report's offense conduct section noted that agents seized and videotaped 203 marijuana plants grown on O'Dell's property.

The government then made clear that it conditioned its acceptance of the plea agreement on the pleas of O'Dell's father and sons to various related state charges. *See United States v. O'Dell (O'Dell III)*, 247 F.3d 655, 661-62 (6th Cir. 2001). When O'Dell became concerned that his plea agreement could prevent his father and sons from obtaining

a judicial diversion from state court, the government added a sentence to the plea agreement indicating that "nothing in this clause of the plea agreement is intended to prevent the defendant's father or the defendant's sons from applying for or obtaining a judicial diversion and their obtaining such diversion will not affect this plea agreement." *Id*. at 662. When O'Dell's father and sons refused to plead to the state charges, the government reported the breach to the district court and indicated that it was no longer bound to abide by the plea agreement, although the government did not actually seek to withdraw its assent. *Id*. The court, however, declined to enforce the plea agreement and ordered the parties to proceed to trial. *Id*.

On December 6, 1994, the government charged O'Dell in a four-count indictment. Count one charged O'Dell with possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Like the earlier information, the indictment contained a reference to the applicable penalty provision, 21 U.S.C. § 841(b)(1)(B). In count two, O'Dell was charged with manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1). This count also cited the penalty provision of 21 U.S.C. § 841(b)(1)(B). Counts three and four alleged O'Dell used property to manufacture marijuana, in violation of 21 U.S.C. § 856, and that O'Dell must forfeit the property pursuant to 21 U.S.C. §§ 841(a)(1) and 856.

On January 3, 1995, O'Dell was arraigned. O'Dell then filed dozens of motions raising numerous issues. O'Dell appealed the denial of some of the motions, and the government cross-appealed when some of the motions resulted in the district court dismissing portions of the indictment. *See United States v. One Tract of Real Prop*., 95 F.3d 422 (6th Cir. 1996) (reversing dismissal of forfeiture count with prejudice); *United States v. O'Dell (O'Dell I)*, Nos. 95-6414 and 95-6415, 1996 WL 515345 (6th Cir. Sept. 10, 1996) (affirming district court's denial of O'Dell's motion to dismiss on double jeopardy grounds and reinstating forfeiture count) (unpublished); *United States v. O'Dell (O'Dell II)*, Nos. 96-6737 and 97-5098 (6th Cir. Dec. 8, 1997)

decision—a party may promptly advise the circuit clerk by letter, with a copy to all other parties, setting forth the citations."[3] In fact, this Court issued one of its major *Apprendi* decisions, *United States v. Ramirez*, 242 F.3d 348 (6th Cir. 2001), *overruled by United States v. Leachman*, 309 F.3d 377, on February 16, 2001, months before publishing the *O'Dell IV* opinion. O'Dell had ample opportunity to make his *Apprendi* argument before this Court decided *O'Dell IV*.

## CONCLUSION

The district court properly construed this Court's decision in *O'Dell IV* as a limited order rather than a general order. We therefore **AFFIRM**.

---

[3]This is the version of Rule 28(j) that became effective on December 1, 2002. The only difference between the new version of Rule 28(j) and the version effective at the times relevant to this case is that the old version prohibited parties from including "argument" about the supplemental authorities in their submissions.

to address the latter contention. *O'Dell IV*, 247 F.3d at 675. If we intended a general remand and a *de novo* sentencing, it would have made sense to address the government's alternative argument.

O'Dell argues that district courts may consider issues beyond the scope of a limited remand "'where there is substantially different evidence raised on subsequent trial; a subsequent contrary view of the law by the controlling authority; or a clearly erroneous decision which would work a manifest injustice.'" *Campbell*, 168 F.3d at 269 (quoting *Moored,* 38 F.3d at 1421); *see also United States v. Bell*, 988 F.2d 247, 251 (1st Cir. 1993) ("[T]he so-called 'mandate rule,' generally requiring conformity with the commands of a superior court on remand, is simply a specific application of the law of the case doctrine and, as such, is a discretion-guiding rule subject to an occasional exception in the interests of justice.").

The trial court's failure to hear O'Dell's *Apprendi* argument is not a "manifest injustice" because O'Dell waived his opportunity to raise *Apprendi*. The Supreme Court decided *Apprendi* on June 26, 2000, during the pendency of *O'Dell IV*.[2] Although the parties filed their final briefs with this Court on April 7, 2000, oral argument was not until October 31, 2000. O'Dell could have raised *Apprendi* then. *See United States v. Harper*, 246 F.3d 520, 529 (6th Cir. 2001) (explaining that the Court allowed the defendant to raise an *Apprendi* issue during oral argument when *Apprendi* was decided after final briefs were submitted and defense counsel wrote the Court requesting to be allowed to raise *Apprendi* during oral argument), *overruled on other grounds by United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002).

Furthermore, Fed. R. App. P. 28(j) states that "[i]f pertinent and significant authorities come to a party's attention after the party's brief has been filed—or after oral argument but before

---

[2]The Supreme Court decided *Jones* even earlier, on March 24, 1999. *See Jones v. United States*, 526 U.S. 227 (1999).

(unpublished order) (dismissing several of O'Dell's other appeals); *O'Dell III*, 154 F.3d 358 (reinstating counts dismissed under the Speedy Trial Act).

O'Dell's case went to trial on March 3, 1999. O'Dell waived his right to a jury trial and tried his case before the district judge. The district court took the matter under advisement.

On March 24, 1999, the Supreme Court decided *Jones v. United States*, 526 U.S. 227 (1999). *Jones* construed the federal carjacking statute, 18 U.S.C. § 2119, which has three subcategories with punishments that increase based on aggravating factors. The Court interpreted § 2119 as "establishing three separate offenses by the specification of distinct elements, each of which must be charged by indictment, proved beyond a reasonable doubt, and submitted to the jury for its verdict." *Id*. at 252. In so holding, the Court explained that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id*. at 243 n.6.

The court ultimately found O'Dell guilty of counts one and two. The Probation Office prepared a second presentence report stating that, unless the so-called "safety valve" sentencing statute applied, O'Dell would receive a five-year mandatory minimum term of imprisonment pursuant to 21 U.S.C. § 841(b)(1)(B). O'Dell objected to the presentence report, arguing that § 841(b)(1)(B) did not apply because he qualified for the safety valve. On July 29, 1999, the court accepted O'Dell's position and applied the safety valve. O'Dell thus received an eighteen-month sentence. The government appealed. *See United States v. O'Dell (O'Dell IV)*, 247 F.3d 655 (6th Cir. 2001).

Before this Court, the government argued, *inter alia*, that the safety valve did not apply, making the statutory mandatory minimum inappropriate. The United States also claimed,

alternatively, that O'Dell should have received twenty-four months. O'Dell argued that he met his burden of establishing that the safety valve applied.

On June 26, 2000, the Supreme Court filed its opinion in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). During the pendency of the government's appeal in *O'Dell IV*, O'Dell filed requests to allow him to raise new arguments. On October 24, 2000, O'Dell sought to raise a *Kyllo* issue after the Supreme Court granted *certiorari* in *Kyllo v. United States*, 190 F.3d 1041 (9th Cir. 1999), *cert. granted* 69 U.S.L.W. 3223 (U.S. Sept. 26, 2000) (No. 99-8508). O'Dell again sought to raise a *Kyllo* issue following the Supreme Court's decision in *Kyllo v. United States*, 533 U.S. 27 (2001).

We issued our opinion in *O'Dell IV* on April 24, 2001. We held that application of the safety valve was improper and that the minimum mandatory provisions of 21 U.S.C. § 841(b)(1)(B) applied instead. *O'Dell IV*, 247 F.3d at 687. We reversed and remanded with the following instructions:

> With respect to the government's appeal in **Case No. 99-6153,** we hold that the district court's finding that O'Dell successfully established his eligibility for the protection of the "safety valve" of 18 U.S.C. §§ 3553(f) and USSG §§ 5C1.2 was clearly erroneous. Thus, we **VACATE** the judgment of sentence entered by district court and **REMAND** for re-sentencing without application of the safety valve.

*Id*. On May 8, 2001, O'Dell filed a petition for rehearing, which we denied on June 12, 2001.

On remand, O'Dell filed a motion arguing that the mandatory minimum in § 841(b) still did not apply, now raising a *Jones/Apprendi* argument for the first time. The district court directed the parties to brief the mandate rule and the question of whether O'Dell could raise the *Jones/Apprendi* issue at this stage. In a written memorandum and order, the district court concluded that the remand was

631 F.2d 461, 466 (6th Cir. 1983), we wrote: "[t]he judgments of conviction are vacated and the cases are remanded to the district court for hearings on the suppression issue. . . . The court shall order a new trial for, and grant the suppression motion of, each appellant whose legitimate expectations of privacy are found to have been violated by the beeper surveillance." *See United States v. Cassity (Cassity II)*, 720 F.2d 451, 459 (6th Cir. 1983) (holding that the mandate in *Cassity I* was a limited mandate).

The difference between the limited mandates and the general mandates is the presence of limiting language. *Moore*, 131 F.3d at 598 (explaining that in each of the three limited remand examples discussed, "on a subsequent appeal, the Court construed its remand order as general rather than specific because the order contained no limiting language"). The *O'Dell IV* mandate, however, specifically instructed the court to "resentenc[e] without application of the safety valve." 247 F.3d at 687. Therefore, based on the distinction demonstrated in *Moore* between general and limited mandates, *O'Dell IV* contained a limited mandate.

Additionally, *Moore* highlighted the Eighth Circuit's opinion in *United States v. Byrne*, 83 F.3d 984 (8th Cir. 1996), *aff'd sub. nom. United States v. Santonelli*, 128 F.3d 1233 (8th Cir. 1997), as another example of a limited mandate. The Eighth Circuit phrased its mandate this way: "[w]e affirm Santonelli's conviction on all counts, vacate his sentence and remand his case to the district court for resentencing." *Id*. at 994. Significantly, according to the Eighth Circuit, *Byrne* was a limited mandate despite its general phrasing because the language "must be read with the analysis offered in the opinion." *United States v. Santonelli*, 128 F.3d at 1237-38 (8th Cir. 1997). Thus, context matters.

A key circumstantial factor indicates that *O'Dell IV* contained a limited mandate. The government not only argued that the court should have imposed a five-year sentence, it also argued alternatively that a sentence below twenty-four months was error. Yet we found it unnecessary

judgment of sentence entered by district court and **REMAND** for re-sentencing without application of the safety valve.

247 F.3d at 687.   According to O'Dell, the trial court erroneously interpreted this text as precluding any consideration of his new arguments.

### B.   *O'Dell IV* Contained a Limited Remand.

In *Moore*, 131 F.3d at 598, we cited language from three different cases as examples of general mandates.  In *United States v. Young*, 34 F.3d 500, 505 (7th Cir. 1994), the court considered the scope of this mandate: "[w]e therefore vacate the district court's sentence and remand the case for resentencing consistent with this opinion."  Next, in *United States v. Caterino*, 957 F.2d 681, 684 (9th Cir. 1992), the Ninth Circuit analyzed this mandate: "[t]he district court erred by adding multiple vulnerable victim adjustments to Appellant['s] offense level under the Guidelines. We therefore VACATE . . . [Defendant's] sentence[ ] and REMAND for resentencing."  Finally, in *United States v. Cornelius*, 968 F.2d 703, 705 (8th Cir. 1992), the Eighth Circuit considered this order:  "we reverse the district court's determination that Cornelius was not an armed career criminal under §§ 924(e) and remand for resentencing."  As we explained, "[e]ach of these three mandates was a general mandate because each one of these cases involved a remand order that simply vacated or reversed the sentence imposed by the district court and remanded for re-sentencing." *Moore*, 131 F.3d at 599.

Our *Moore* decision also discussed several cases in which courts issued limited remands.  131 F.3d at 598.  In *United States v. Polland (Polland I)*, 994 F.2d 1262, 1271 (7th Cir. 1993), the Seventh Circuit wrote: "[f]or the foregoing reasons, the conviction is AFFIRMED, the sentence is VACATED, and the case is REMANDED for resentencing on the issue of obstruction of justice."  *See United States v. Polland (Polland II)*, 56 F.3d 776, 778 (7th Cir. 1995) (finding that the language from *Polland I* was a limited mandate).  Likewise, in *United States v. Cassity (Cassity I)*,

limited and that it lacked the authority to consider the *Jones/Apprendi* issue.  The court also held, alternatively, that the *Jones/Apprendi* issue had no merit.

On August 20, 2001, O'Dell filed another motion for a guideline sentence, this time basing his argument on the then-recently announced (but subsequently vacated and reversed *en banc*) Ninth Circuit decision in *United States v. Buckland*, 259 F.3d 1157 (9th Cir. 2001), *reh'g granted*, 265 F.3d 1085, *rev'd*, 277 F.3d 1173 (9th Cir. 2002) (*en banc*).

On the day of sentencing, September 4, 2001, O'Dell filed two new motions.  First, O'Dell argued that pursuant to 18 U.S.C. § 3553 and the Eighth Amendment, he should receive a downward departure.  He also argued that a mandatory minimum sentence would violate his Fifth Amendment right to due process and Eighth Amendment right to protection from cruel and unusual punishments.

The district court rejected these motions and sentenced O'Dell to the mandatory minimum term of sixty months followed by four years of supervised release.  O'Dell filed this timely appeal.  O'Dell has already served more than the eighteen-month sentence he claims the trial court should have imposed.

At oral argument, O'Dell's counsel conceded that recent Supreme Court decisions in *Cotton v. United States*, 122 S. Ct. 1781 (2002), and *Harris v. United States*, 122 S. Ct. 2406 (2002), vitiated the *Jones/Apprendi* and jurisdictional arguments that constituted most of O'Dell's appeal.[1]  Thus, the only issue we must decide is whether the *O'Dell IV* remand was limited or general.  If we hold that the *O'Dell IV* remand was general and if we remand the case for an entirely new sentencing hearing, O'Dell could then make his Fifth and Eighth Amendment arguments to the trial court.

---

[1]O'Dell argued in his brief that the trial court lacked jurisdiction over the case because of an alleged defect in the indictment.

## DISCUSSION

The interpretation of a mandate is a legal issue which this Court reviews *de novo*. *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997). We find that the district court properly construed this Court's decision in *O'Dell IV* as a limited order rather than a general order.

### A.   The Mandate Rule Defined.

The mandate rule has two components—the limited remand rule, which arises from action by an appellate court, and the waiver rule, which arises from action (or inaction) by one of the parties. As the Second Circuit explained:

> The mandate rule "compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or *impliedly* decided by the appellate court." Likewise, where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so.

*United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (citations omitted) (emphasis in original).

The basic tenet of the limited remand component of the mandate rule is that "a district court is bound to the scope of the remand issued by the court of appeals." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999). Appellate courts have the authority to give either a general or limited remand. As this Court explained in *Moore*, if a remand is general, the district court can resentence the defendant *de novo*, "which means the district court may redo the entire sentencing process including considering new evidence and issues." 131 F.3d at 597. When the remand is not general, "the district court's resentencing authority [is limited] to the issue or issues remanded." *Id*. at 598. The mandate rule serves the interest in finality. "Repetitive hearings, followed

by additional appeals, waste judicial resources and place additional burdens on parole officers and personnel and on hardworking district and appellate judges." *Id*. at 599-600 (quotation omitted); *Super X Drugs Corp. v. FDIC*, 862 F.2d 1252, 1256 (6th Cir. 1988) (issuing limited remand "[t]o conserve judicial time and resources"). When considering sentencing remands, however, we are less likely to find a general mandate:

> to impose a limited remand, an appellate court must sufficiently outline the procedure the district court is to follow. The chain of intended events should be articulated with particularity. With sentencing issues, in light of the general principle of *de novo* consideration at resentencing, this court should leave no doubt in the district judge's or parties' minds as to the scope of the remand. The language used to limit the remand should be, in effect, unmistakable.

*Campbell*, 168 F.3d at 268. Thus, "[a] limited remand must convey clearly the intent to limit the scope of the district court's review." *Id*. at 267.

In *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994), this Court explained that to determine whether a remand is limited or general, one should look to the purpose of the rule—encouraging finality and discouraging wasteful litigation—and "the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *See also Campbell*, 168 F.3d at 266 (noting that mandates should be viewed in the context of the entire opinion).

O'Dell argues that the district court mistakenly construed the *O'Dell IV* mandate as limited. That mandate read:

> With respect to the government's appeal in **Case No. 99-6153,** we hold that the district court's finding that O'Dell successfully established his eligibility for the protection of the "safety valve" of 18 U.S.C. §§ 3553(f) and USSG §§ 5C1.2 was clearly erroneous. Thus, we **VACATE** the