<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 18a0456n.06

Case No. 17-5553

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

ILLINOIS CENTRAL RAILROAD              )
COMPANY,                               )
                                       )
    Plaintiff-Appellant,           )
                                       )
v.                                     )
                                       )
TENNESSEE DEPARTMENT OF                )
REVENUE; REAGAN FARR, Commissioner     )
of Revenue of the State of Tennessee,  )
                                       )
    Defendants-Appellees.          )
                                       )

FILED
Aug 31, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF
TENNESSEE

BEFORE: COOK, McKEAGUE, and STRANCH, Circuit Judges.

COOK, Circuit Judge. Federal law prohibits states from imposing a tax "that discriminates against a rail carrier." 49 U.S.C. § 11501(b)(4). This appeal concerns whether Tennessee violated that prohibition by imposing sales or use taxes on rail carriers when they bought or consumed diesel fuel while exempting competing motor carriers. Because the motor carriers instead paid another, comparable fuel tax, we conclude that Tennessee did not discriminate against rail carriers and AFFIRM.

## I. BACKGROUND

### A. Tennessee's Tax Laws

Tennessee taxes the sale, consumption, or use of personal property. *See* Tenn. Code Ann. § 67-6-201 *et seq*. From 2006 through mid-2014, the state taxed railroads' purchase or use of

diesel fuel at 7% of the retail price. Because railroads paid a 7% sales tax on every fuel purchase, their effective tax rate per gallon of diesel fuel fluctuated depending on its price. In contrast, motor carriers competing with railroads are exempt from sales and use taxes on diesel fuel. *See* Tenn. Code Ann. § 67-6-329(a)(2). They instead pay a fixed diesel tax of 17 cents a gallon on fuel they consume in Tennessee.[1] *See* Tenn. Code Ann. §§ 67-3-202 (2013), 67-3-1204.

In July 2014, Tennessee enacted a new tax scheme that effectively repeals the sales and use tax on railroads' diesel fuel purchases and instead subjects railroads to the same per-gallon diesel fuel tax the state levies on motor carriers. *Compare* Tenn. Code Ann. §§ 67-3-1405 to -1406 (Transportation Fuel Equity Act), *with* Tenn. Code Ann. § 67-3-202 *and* Tenn. Code Ann. § 67-3-1201 *et seq*. Illinois Central and other railroads challenged this amended tax scheme in a separate lawsuit. *See BNSF Ry. Co. v. Tenn. Dep't of Revenue*, 800 F.3d 262, 275 (6th Cir. 2015).

### B. Procedural History

Illinois Central sued the Tennessee Department of Revenue and its Commissioner in 2010, claiming that Tennessee's sales and use taxes discriminated against railroads under the Railroad Revitalization and Regulatory Reform Act ("4-R Act") because the state exempted motor carriers from those taxes. After a bench trial, the district court agreed with Illinois Central and enjoined Tennessee from taxing the railroad's purchase or consumption of diesel fuel. *Ill. Cent. R.R. Co. v. Tenn. Dep't of Revenue*, 969 F. Supp. 2d 892, 901 (M.D. Tenn. 2013).

---

[1] Although the parties stipulate to the amount of the tax during the period relevant to this lawsuit, Tennessee has since amended the tax statute. *See* Tenn. Code Ann. §§ 67-3-202 to -205.

Case No. 17-5553, *Ill. Cent. R.R. v. Tenn. Dep't of Revenue*

While the case was on appeal to this court, the Supreme Court evaluated a similar challenge to an Alabama sales and use tax scheme that exempted motor carriers, but not railroads. *See Ala. Dep't of Revenue v. CSX Transp., Inc.*, 135 S. Ct. 1136, 1139–40 (2015) ("*CSX II*"). Previously, the Court held that a tax discriminates under the 4-R Act when it treats similarly situated groups differently without "sufficient justification" for the difference in treatment. *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277, 288 n.8 (2011) ("*CSX I*"). Clarifying what *CSX I* meant by sufficient justification, *CSX II* explains that "an alternative, roughly equivalent tax is one possible justification that renders a tax disparity nondiscriminatory." 135 S. Ct. at 1143.

Because the district court did not initially consider whether Tennessee's tax on motor carriers was "roughly equivalent" to the sales and use tax, we remanded this matter for further proceedings "in light of [*CSX II*]." On remand, Illinois Central and Tennessee both moved for summary judgment. The district court granted summary judgment to Tennessee, finding that the state sufficiently justified the tax on railroad diesel fuel for two reasons. *Ill. Cent. R.R. Co. v. Tenn. Dep't of Revenue*, No. 3:10-cv-00197, 2017 WL 1347269, at *7–9 (M.D. Tenn. Apr. 12, 2017). First, the court found that Illinois Central and motor carriers paid alternative, roughly equivalent taxes. *Id.* at *7–8. Second, it concluded that any discrimination was effectively self-imposed because railroads chose to burn dyed diesel fuel, rather than clear diesel—even though the railroad could avoid paying sales and use taxes by switching to clear fuel. *Id.* at *8–9. Illinois Central appeals, claiming that the taxes were not roughly equivalent and that the clear fuel ruling exceeded the scope of the remand.

After this court heard oral argument on Illinois Central's instant appeal, the Eleventh Circuit, on remand from *CSX II*, released its opinion in *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 888 F.3d 1163 (11th Cir.) ("*CSX III*"), *opinion modified on denial of reh'g*, 891 F.3d 927 (11th Cir. 2018).[2]

## C. The 4-R Act

The 4-R Act bars various forms of discriminatory taxation against rail carriers. 49 U.S.C. § 11501(b). It provides that states and their subdivisions may not:

(1) Assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.

(2) Levy or collect a tax on an assessment that may not be made under paragraph (1) of this subsection.

(3) Levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

(4) Impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Board under this part.

*Id.* Illinois Central challenges Tennessee's tax scheme under § 11501(b)(4), a "catch-all provision" against discriminatory taxes not otherwise covered by the first three provisions. *CSX I*, 562 U.S. at 281.

---

[2] The Eleventh Circuit later modified this opinion on panel rehearing in a two-page opinion for reasons not relevant to this appeal. *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 891 F.3d 927, 928 (11th Cir. 2018) (per curiam).

## II.  DISCUSSION

We review de novo the district court's grant of summary judgment.  *McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004) (per curiam).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

### A.   The Taxes Are Roughly Equivalent

### 1.   Railroads and Motor Carriers Pay Similar Tax Rates on Diesel Fuel

Illinois Central first challenges the district court's ruling that motors carriers and railroads paid roughly equivalent taxes on diesel fuel.  The court examined the respective taxes on diesel fuel that motor carriers and railroads paid from 1941 through June 2014, when Tennessee began implementing its amended tax scheme. *Ill. Cent. R.R. Co.*, 2017 WL 1347269, at *3, *7–8.  During that time, the district court found that motor carriers paid more taxes per gallon of diesel fuel than railroads in every year except for when fuel prices spiked in 2008 and between 2011 and June 2014.  *Id.* at *7–8.  Because, "on average, motor carriers have a higher tax burden," the district court concluded that the railroads and motor carriers paid roughly equivalent taxes on diesel fuel. *Id.* at *8.

*CSX II* did not tell us how to discern whether taxes are roughly equivalent.  Like the district court here, however, the Eleventh Circuit, in *CSX III*, decided that "'roughly equivalent' bears its ordinary meaning and that two taxes are roughly equivalent if the rates they impose approximate one another. . . . It does not mean 'perfectly equivalent.'"  *CSX III*, 888 F.3d at 1179.  Because the average rates that railroads and motor carriers paid in Alabama over a nine-year period differed

only "by some quantity between less-than-half-of-one cent and 3.5 cents" per gallon of diesel fuel, favoring railroads as many times as motor carriers, the Eleventh Circuit found that the taxes were roughly equivalent. *Id.* (quoting *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 247 F. Supp. 3d 1240, 1250–51 (N.D. Ala. 2017)).

Although the district court applied a similar test, Illinois Central maintains that rather than comparing tax rates, we should apply the compensatory tax doctrine—a negative Commerce Clause test for scrutinizing in-state and out-of-states taxes. Despite *CSX II* never mentioning that doctrine, the railroad insists that the Supreme Court directed courts to adopt it. But in *CSX II*, the Court simply observed that "[o]ur negative Commerce Clause cases endorse the proposition that an additional tax on third parties may justify an otherwise discriminatory tax." 135 S. Ct. at 1143 (citing *Gregg Dyeing Co. v. Query*, 286 U.S. 472, 479–80 (1932)). Though this is all *CSX II* said about the negative Commerce Clause, Illinois Central interprets the Court's citation to *Gregg Dyeing* as endorsing the compensatory tax doctrine.

We disagree. *Gregg Dyeing* held that a South Carolina tax on gasoline shipped into the state did not discriminate against out-of-state commerce because a separate, in-state tax ensured that all gasoline consumers paid the same amount of tax. 286 U.S. at 481–82. Regardless of the railroad's assertion, we fail to see how that citation requires us to apply the compensatory tax doctrine. On the contrary, we simply read it as support for the general proposition that a state may be justified in exempting a competitor from one tax if it levies an alternative tax on that competitor. *See CSX III*, 888 F.3d at 1178 (interpreting *CSX II*'s citation to *Gregg Dyeing* "as simply a reference to the general principle that courts should consider other taxes a state imposes when

6

assessing a facially discriminatory tax for 4-R Act purposes"). Indeed, had the Supreme Court wanted us to employ a Commerce Clause test under the 4-R Act, we would have expected them to say so.

Rather than apply the compensatory tax doctrine, we agree with the Eleventh Circuit that taxes are roughly equivalent if they impose similar rates. *Id.* at 1179. In comparing the taxes, Illinois Central's expert asks us to focus on the period between 2007 and June 2014. But even looking only at that seven-year stretch, the tax rates were roughly equivalent. According to the railroad's own expert, between 2007 and June 2014, the railroads' and motor carriers' tax rates differed by between less-than-half-of-one cent and approximately five cents per gallon. The railroads paid a higher rate in 2008 and again from 2011 through June 2014, but motor carriers paid more in every other year. The excess tax burden for railroads was, at most, an extra 5.2 cents per gallon; motor carriers paid up to 4.2 extra cents per gallon. This difference correlates with the disparity that the Eleventh Circuit considered in *CSX III*. We likewise conclude that the taxes are roughly equivalent.

## 2. Tennessee's Tax Revenue Allocation

Undeterred, Illinois Central presses us to consider Tennessee's allocation of tax revenue in evaluating its discrimination claim. The motor carriers' fuel taxes fund public highways, says Illinois Central, benefiting trucks. But the railroads' taxes go to state funds that allegedly afford little benefit to large railroads.

Unfortunately for Illinois Central, this train has already left the station. In *BNSF Ry. Co. v. Tennessee Dep't of Revenue*, we evaluated a challenge to Tennessee's amended tax scheme and

determined that "how Tennessee uses the proceeds of its taxation of diesel fuel is irrelevant to the question of whether the Railroads have been discriminated against within the meaning of the 4–R Act." 800 F.3d at 274. Similarly, *CSX III* found that the statute's plain language thwarts any call to examine how states allocate their tax revenue. 888 F.3d at 1175–76. Section 11501(b)(4) provides that no state shall "[i]mpose another tax that discriminates against a rail carrier." The syntax of that sentence "makes clear that the source of discrimination must be the state's imposition of a tax." *Id.* at 1175. The railroad's reading depends on equating "tax" with "revenue," and the Eleventh Circuit refused to adopt that interpretation. *Id.* at 1175–76. Instead, the court looked to the definition of "impose"—meaning "[t]o levy or exact (a tax of duty)"—and concluded that a state cannot "levy or exact" a revenue expenditure. *Id.* at 1175 (citing Black's Law Dictionary (10th ed. 2014)). We agree and decline the invitation to revisit *BNSF*.

### B. The District Court's Clear Fuel Ruling

In the alternative, the district court held that Illinois Central's choice to use dyed diesel fuel rather than clear fuel also justified their differential tax treatment. *Ill. Cent. R.R. Co.*, 2017 WL 1347269, at *8–9. The court explained that the railroad could avoid paying sales and use taxes by operating on clear diesel fuel. *Id.* at *9. Because the railroad opted to burn dyed fuel to bypass applying for tax refunds on clear fuel, the district court concluded that Tennessee has "offered sufficient justification that its tax structures for diesel are not discriminatory against railroads." *Id.* Illinois Central claims that ruling exceeds the scope of our earlier remand.

"We interpret the scope of a mandate with fresh eyes." *United States v. Patterson*, 878 F.3d 215, 217 (6th Cir. 2017). In assessing whether we issued a limited remand, we look to any

"limiting language" in the instructions and the broader context of the opinion. *Id.* (citing *United States v. O'Dell*, 320 F.3d 674, 679–81 (6th Cir. 2003)). Our order stated that, "[u]pon consideration of [Illinois Central]'s motion to remand this matter to the district court for further proceedings in light of *Alabama Dep't of Revenue v. CSX Transportation, Inc.*, 135 S. Ct. 1136 (2015), the response in opposition, and the reply in support," the case is remanded to the district court for further proceedings.

Put simply, we narrowed the remand to consideration of *CSX II*. There, the Supreme Court directed the Eleventh Circuit "to consider whether Alabama's fuel-excise tax is the rough equivalent of Alabama's sales tax as applied to diesel fuel, and therefore justifies the motor carrier sales-tax exemption." 135 S. Ct. at 1144. Interpreting those instructions on remand, the Eleventh Circuit decided that the district court's task was merely to appraise whether those taxes were roughly equivalent. *CSX III*, 888 F.3d at 1173–74. As a result, the Eleventh Circuit concluded that the Alabama district court overstepped its bounds by opining on a similar clear fuel argument. *Id.*

Likewise, we agree that the district court here ventured beyond the *CSX II* inquiry. Notably, in their response to Illinois Central's motion to remand, Tennessee acknowledged that "the *only* thing left to be determined in this case is whether Tennessee's imposition of a fuel-excise tax on motor carriers sufficiently justifies their exemption from the general sales-and-use tax paid by railroads." Given that concession and our order, the district should not have considered the clear fuel argument. But because we agree with the district court's rough equivalence holding, the error is harmless.

## III. CONCLUSION

We AFFIRM the district court's judgment.