**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Anthony ALFARANO and James Cornelius, Defendants-Appellants.**

**Nos. 82–3045, 82–3046.**

United States Court of Appeals, Sixth Circuit.

March 9, 1983.

Certiorari Denied May 16, 1983. See 103 S.Ct. 2095.

Robert N. Trainor, Cincinnati, Ohio, for defendants-appellants.

Christopher Barnes, U.S. Atty., Terry W. Lehmann, Asst. U.S. Atty., Cincinnati, Ohio, for plaintiff-appellee.

Before MARTIN and WELLFORD, Circuit Judges, and PECK, Senior Circuit Judge.

## ORDER

Anthony Alfarano and James Cornelius appeal their convictions for receiving stolen property across state lines in violation of 18 U.S.C. §§ 2 and 2315.

■ As part of a joint federal and local law enforcement organization, Interstate Crime Unit agents rented an apartment in Sharonville, Ohio to set up a "sting" operation for the recovery of stolen goods. Two undercover agents met the appellants in the apartment on November 7, 1980, upon appellants' request. The appellants intended to sell approximately $50,000 worth of jewelry, some with original jeweler tags and in original sample cases. The exchange, unknown to the appellants, was being tape recorded on equipment located outside the apartment.

In the course of the exchange, the appellants indicated they had "checked out" Bloomfield whom they trusted as a dealer in "hot" or stolen goods. Bloomfield was in fact a jewelry executive cooperating with the ICU as a "cover" for the operation. The appellants also advised the undercover

agents not to sell the jewelry in the New York/New Jersey/Philadelphia area because it had come from there. After some bargaining, the appellants and the undercover agents agreed on a sale price of $11,000, less than one quarter of the jewelry's actual and apparent value. As soon as the money had changed hands, ICU officers entered the apartment and ordered the occupants to "freeze." While some officers "patted down" the appellants, others seized the jewelry and additional items in the apartment.

The appellants consented to travel in Sharonville police cruisers to the Sharonville police station to inventory the items seized. They were given *Miranda* warnings before any questions were asked. On that occasion, the appellants were never fingerprinted, photographed, charged or "booked." The inventory of the jewelry lasted a few hours after which the appellants were released.

Over the subsequent six months government prosecutors attempted to develop additional evidence against the appellants. Although progress was difficult, ultimately the appellants' jewelry was identified as proceeds from a $200,000 burglary of a Pennsylvania jewelry store. Other evidence included testimony of a third party to whom appellants confided that they knew the jewelry was stolen.

The principal contention of the appellants is that their motion to dismiss should have been granted according to the Speedy Trial Act, 18 U.S.C. § 3161. The Speedy Trial Act argument hinges on two factors. The defendants must demonstrate that their rights under the STA attach upon arrest. Second, they must show that they were in fact arrested. Section 3161(b), the meat of the STA reads:

Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons *in connection with such charges.* If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty day period, the period of time for filing of the indictment shall be extended an additional thirty days.

(emphasis added). The Speedy Trial Act Implementation Plan of the Southern District of Ohio, Section III, begins computation of the thirty days when the "person (i) is held in custody solely for the purpose of responding to a *federal charge;* (ii) is delivered to the custody of a federal officer in connection with a *federal charge;* (iii) is before a judicial officer in connection with a *federal charge.*" (emphasis added). In *United States v. Hillegas,* 578 F.2d 453 (2d Cir.1978), the court found that the purpose of the STA was to expedite pending criminal proceedings but that the STA would not affect the prosecutor's discretion and time to investigate before filing charges. We conclude that the STA is triggered "if an individual is arrested or served with a summons *and the complaint charges an offense.*" Southern District of Ohio Speedy Trial Act Implementation Plan. (emphasis added).

Defendants were not charged with an offense, federal or otherwise, until August of 1981. Even if a charge had been filed against appellants but subsequently and promptly dropped in good faith by the government, section 3161(b) of the STA does not apply. *United States v. Jones,* 676 F.2d 327 (8th Cir.1982). Neither the STA nor the Sixth Amendment rights of appellants apply to the time between a criminal occurrence and a subsequent formal charge of wrongdoing. *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982); *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

Furthermore, the appellants failed to show that the United States deliberately delayed the indictment to gain an unconscionable advantage. In fact, appellants have not shown any prejudice as a result of the delay; they were fully aware that they were prime suspects of the investigation at all times prior to their indictment.

■ The appellants also complain that they were not furnished with one tape of the apartment conversation in violation of their fifth amendment rights to a fair trial. The record indicates, to the contrary, that their counsel were afforded adequate access to the tape. The trial judge offered appellants at the suppression hearing and again before trial an opportunity to hear and examine the tape. We find no prosecutorial misconduct before or during the trial which might indicate that appellants were denied fundamental rights to a fair trial.

■ Additionally, the appellants appeal from the district court's denial of their motion to suppress the jewelry and other evidence. They assert that the warrantless seizure was without probable cause in violation of their fourth amendment rights. Facts which led ICU agents to believe the jewelry was stolen abounded: appellants transported $50,000 worth of jewelry in a pillowcase, a brief case, and a plastic bag; original price tags still marked the jewelry; and the conversation between the appellants and undercover agents established that the jewelry was "hot." The appellants' motion to suppress was properly denied because officers had probable cause to believe the jewelry had been stolen.

Appellants make several other arguments on appeal. We have carefully considered the arguments and find them to be without merit.

The judgment of the district court is affirmed.