UNITED STATES of America,
Plaintiff–Appellee,

v.

Mark Anthony GRAEF, Defendant–
Appellant.

No. 93–2587.

United States Court of Appeals,
Sixth Circuit.

Argued May 9, 1994.

Decided June 14, 1994.*

David Debold (briefed), Stephen L. Hiyama, Asst. U.S. Atty. (argued), Detroit, MI, for plaintiff-appellee.

Mark A. Ambrose (argued and briefed), Ambrose & Ambrose, Walled Lake, MI, for defendant-appellant.

Before: BOGGS, SUHRHEINRICH, and DAUGHTREY, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Graef was convicted of drunk driving under M.C.L. 257.625(1), a misdemeanor offense. The offense was tried in federal court because the conduct occurred on the Selfridge Air National Guard base, a federal enclave, and the Michigan drunk driving statute is incorporated into the federal criminal law pursuant to 18 U.S.C. § 13 (Assimilative Crimes Act). Graef appeals, asserting a violation of the Federal Speedy Trial Act, 18 U.S.C. § 3161(b) (FSTA), and a lack of subject matter jurisdiction. We **AFFIRM**.

* This decision was originally issued as an "unpublished decision" filed on June 14, 1994. On July 22, 1994, the court designated the opinion as one recommended for full-text publication.

## I.

The facts of this case are straightforward. In the early morning of June 18, 1992, police officers at Selfridge observed Graef attempting to change a flat tire by the side of a road located inside a restricted area of the base. When asked how he got onto the restricted area of the base, Graef responded that he had been driving on South River Road when an oncoming car forced him off the road. Graef then told the officers that he had crashed through the security fence surrounding the base and ended up on the base road with a flat tire. Detecting the smell of alcohol and noting Graef's slurred speech, the officers asked Graef to perform a series of field sobriety tests, which he failed.

The officers took Graef to the Selfridge police station where Graef refused to take a breathalyzer test or to provide urine or blood for analysis. He was put into a cell and held overnight. In the morning, Graef was released and given a "violation notice" for Operating a Vehicle Under the Influence of an Intoxicating Liquor, (OUIL)–3rd Offense. A third OUIL offense is a felony under Michigan law. This was, in fact, only Graef's second offense, however, and a second OUIL offense, although subject to an enhanced penalty, is nevertheless a misdemeanor.

Pursuant to the "violation notice," Graef appeared before the magistrate on August 5, 1992. Trial was set for September 2, 1992, and was continued until October 7, 1992, on Graef's request. On October 7, however, the ticket was dismissed because an OUIL–2nd Offense, punishable by up to a year in prison, is not a "petty offense" and cannot be prosecuted on a "violation notice." *See* Fed. R.Crim.P. 58(b)(1). No charges were then pending until December 16, 1992, when the government filed an information charging Graef with OUIL and giving notice that an enhanced penalty would apply because it was Graef's second offense. No criminal complaint was ever filed. The jury ultimately acquitted Graef of OUIL but convicted him of the lesser-included offense of operating his motor vehicle while visibly impaired under M.C.L. 257.625(3).

## II.

■ Graef filed a motion to dismiss on the ground that the 180-day delay between his arrest on June 18 and the filing of the information on December 16 violated the thirty-day provision of 18 U.S.C. § 3161(b),[1] which provides:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

The district court denied the motion and, because the relevant facts are not in dispute, we review the district court's application of the FSTA *de novo.*

The pivotal issue is whether the events occurring on June 18 constituted an "arrest" or a "service of a summons" in connection with the OUIL offense charged in the December 16 information. If so, all parties concede that a violation of the FSTA occurred and the information upon which Graef was convicted should have been dismissed, albeit without prejudice. If not, Graef concedes that there was no violation because there were no subsequent events which might have served to trigger the thirty-day clock.

There is no question but that Graef was "arrested" on June 18 in the ordinary, and constitutional, sense of that word and that his arrest was "in connection with" the OUIL conduct charged in the December 16 indictment.

The government contends that the term "arrested" in the FSTA means more than a full, custodial arrest. The remedy provisions of the FSTA provide:

> If, in the case of any individual *against whom a complaint is filed* charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) ... such charge against that individual *contained in*

1. Graef raises only an FSTA claim and does not claim a violation of either the Fifth or Sixth

Amendment's more amorphous timeliness requirements.

*such complaint* shall be dismissed or otherwise dropped.

18 U.S.C. § 3162(a)(1) (emphasis added). This lack of a remedy for a more-than-thirty-day delay between the complaintless arrest and the filing of an indictment or information has led courts unanimously to conclude that the arrest "trigger" for § 3161(b) applies only to arrests made either on a complaint or which were immediately followed by a complaint. *See United States v. Mills,* 964 F.2d 1186, 1189 (D.C.Cir.) (en banc) (citing, among others, *United States v. Alfarano,* 706 F.2d 739, 741 (6th Cir.) (per curiam), *cert. denied,* 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983)), *cert. denied,* —— U.S. ——, 113 S.Ct. 471, 121 L.Ed.2d 378 (1992); *United States v. Blackmon,* 874 F.2d 378, 381 (6th Cir.) ("defendant is not 'arrested' for purposes of the Speedy Trial Act until formal federal charges are pending"), *cert. denied,* 493 U.S. 859, 110 S.Ct. 168, 107 L.Ed.2d 125 (1989). In the present case, because no complaint was ever filed against Graef, there could be no "arrest" for purposes of beginning the 30–day pre-indictment clock.

The second "trigger" for § 3161(b) is the date upon which the defendant is "served with a summons." Just as there was never a complaint in this case, no summons was ever issued here. *See* Fed.R.Crim.P. 4(a) and 9(a) (summons may issue upon a complaint or indictment/information). The only remaining question therefore, is whether, in these circumstances, the "violation notice," which was given to Graef on June 18 and which directed him to appear before the magistrate judge to answer to the charge (erroneously) of OUIL–3rd Offense, was a "summons" for purposes of the FSTA.

Graef's argument must fail. To find that the "violation notice" somehow served as a "summons" in this case would create the same "right-without-a-remedy" problem avoided by grafting a "formal charges" requirement onto the arrest "trigger." Because the only remedy permitted by § 3162(a)(1) is dismissal of the charges contained in the *complaint,* it necessarily follows that the summons "trigger" must refer to a summons issued in conjunction with a complaint pursuant to Fed.R.Crim.P. 4(a). Therefore, we hold that a complaint is a prerequisite for the FSTA's summons "trigger" just as it is for the FSTA's arrest "trigger."

## III.

Graef also challenged the district court's subject matter jurisdiction in a motion to dismiss, asserting that the conduct charged in the information does not constitute a crime under Michigan's drunk driving statute because Michigan law only prohibits drunk driving in "places open to the general public" and, therefore, does not prohibit drunk driving on a "closed" Air National Guard base.

■ It appears that the facts of this case do not support Graef's argument under any reading of the statute. It is undisputed that South River Road, on which Graef was driving before crashing through the security fence and ending up inside the restricted portion of the base, is *also* part of the Selfridge property. Thus, he was driving in an area "open to the public," even adopting Graef's narrow reading of the Michigan statute, and could properly be convicted under Michigan's OUIL statute. This publicly accessible area is federal property and, therefore, prosecution in federal court under the Assimilative Crimes Act was proper.

■ Moreover, Graef's argument is precluded by the January 1, 1992, amendments to M.C.L. 257.625. To the language prohibiting drunk driving on a "highway or other place open to the general public," the Michigan legislature added a prohibition against drunk driving anywhere "generally accessible to motor vehicles." There is no question that much if not all of Graef's conduct, beginning on the public road outside the security fence and ending on the restricted base road inside the fence, occurred in areas "generally accessible to motor vehicles." Because Graef's argument depends upon a selective reading of the facts and a superseded statute, we deny relief on this ground as well.

## IV.

For the reasons discussed above, we **AFFIRM** Graef's conviction in all respects.