**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0327n.06

Case No. 19-5734

| UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT | | |
|---|---|---|

| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE MIDDLE DISTRICT OF |
| | ) | TENNESSEE |
| JACQUISE MILLER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

**FILED**

Jun 05, 2020

DEBORAH S. HUNT, Clerk

BEFORE: DONALD, THAPAR, and NALBANDIAN, Circuit Judges.

THAPAR, Circuit Judge. This case, like many others before it, comes down to judicial role. The role of the trial judge is to determine what evidence is admissible—not to step into the role of the jury and weigh the evidence. For this reason, Jacquise Miller's evidentiary objections do not prevail. As for Miller's other arguments, the evidence was enough to convict him and his below-guidelines sentence was reasonable. We affirm.

The story begins with two drivers blocking an alley in a housing project. One of those drivers was Jacquise Miller. Miller parked his car, got out, and walked away as soon as an officer approached the scene. Meanwhile, the officer smelled burnt marijuana and saw marijuana in plain sight in Miller's car. So law enforcement towed Miller's car and got a search warrant. During the search, the officers found multiple bags of marijuana, a bag of cocaine, a marijuana cigarette, two cell phones, a loaded gun, and digital scales.

Miller was charged with possession with intent to distribute cocaine and possession of a firearm in furtherance of a drug trafficking crime. After a four-day trial, the jury convicted Miller on both counts.

Now, Miller raises four arguments on appeal. First, that a witness should not have been allowed to testify about seeing Miller engage in an earlier drug sale. Second, that a selfie video of Miller likewise should not have been admitted. Third, that there was not enough evidence for the jury to convict him. And fourth, that the sentence the district court imposed was unreasonable. We consider each in turn.

*The Prior Drug Sale Testimony.* At trial, a witness testified that she had seen Miller engage in an apparent drug sale a few weeks before he was charged. She was in the car with Miller and saw him weigh crack cocaine on a scale and put it in a small bag. (She also saw him handling powder cocaine and marijuana.) She then watched Miller do a hand-to-hand exchange with an unknown man in the alley (the same one where he later left his car). Miller returned to the car counting cash.

The district court admitted this evidence as proof of a prior bad act that showed Miller's intent to distribute drugs. Miller now argues that the testimony should not have been admitted for three reasons: (1) the witness was not credible enough for anyone to conclude that the prior act occurred, (2) the testimony was not admitted for a proper purpose, and (3) the risk of unfair prejudice substantially outweighed the probative value of the testimony.

*First*, whether this prior act took place. Miller says the witness was not credible enough for anyone to believe that these events happened. No doubt, Miller is right that the jury and district court had some reason to question the witness's credibility. She had a complicated prior relationship with Miller and her story was not always perfectly consistent. That said, credibility

was the jury's call. Indeed, it would have been improper for the district judge to make a credibility finding herself, as Miller now asks. That's because "similar act evidence is relevant . . . if the *jury* can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 689 (1988) (emphasis added). Given the extensive testimony here, the judge was right that the jury *could* believe or disbelieve the witness when she explained the prior drug sale.

*Second*, the purpose of the evidence. The evidence was admitted for a proper purpose: to show Miller's *intent* regarding the drugs found in his car. After all, Miller was charged with a specific intent crime, *see United States v. Lattner*, 385 F.3d 947, 957 (6th Cir. 2004), so his intent was at issue throughout the proceedings, *see United States v. Bilderbeck*, 163 F.3d 971, 977 (6th Cir. 1999). Specifically, the jury had to decide whether Miller intended to sell the drugs or merely possessed them. That he had sold similar drugs in his possession—in the same place and with similar materials—spoke to that issue of intent. That's why "[w]e have repeatedly recognized that prior drug-distribution evidence is admissible to show intent to distribute." *United States v. Ayoub*, 498 F.3d 532, 548 (6th Cir. 2007). Thus, the purpose was proper.

*Third*, the balance between unfair prejudice and probative effect. Evidence is not admissible if the risk of unfair prejudice substantially outweighs its probative value. *See* Fed. R. Evid. 403. In reviewing this issue, we are deferential to the district court's fact-specific judgment. We "maximiz[e]" the probative value of the evidence and "minimiz[e]" any prejudicial effect. *United States v. Young*, 847 F.3d 328, 349 (6th Cir. 2017).

Here, the testimony was extremely probative. If Miller had already sold drugs in the housing project alley, it was far more likely that he intended to do so again with the supply he possessed—especially since the acts were both "substantially similar" and "near in time" (not to

mention place). *United States v. Hardy*, 643 F.3d 143, 151 (6th Cir. 2011) (cleaned up). As for prejudice, Miller argues that the jury would consider the evidence for more than just intent—for example, to show that Miller was a person of bad character. But the district court addressed this risk with a "detailed instruction" to the jury. *Ayoub*, 498 F.3d at 548. Overall, the district court did not err in permitting the prior drug sale testimony.

*The Selfie Video.* The jury also saw a selfie video that Miller recorded on his cell phone three days before the drugs were found. The relevant footage shows Miller in the housing project talking to a woman. She asks Miller something: either "you ain't got nothing?" or "you ain't doing nothing?"[1] Miller then clearly responds: "I ain't got nothing right now, man, Ima have something in a little bit."

The district court admitted this video as evidence of Miller's preparation, plan, or intent. *See* Fed. R. Evid. 404(b)(2). (It also admitted the video only *after* the defense, in cross-examining one witness, opened the door by asking a testifying agent whether he expected to find evidence of drug activity on Miller's phone (implying that no such evidence was found).) Miller now says the video was (1) irrelevant, (2) not authenticated, and (3) substantially more prejudicial than probative. *See* Fed. R. Evid. 401, 403, 901.

*First*, the video was no doubt relevant. Again, a key issue in this case was whether Miller intended to sell the drugs found in his car. The video spoke directly to that issue. A reasonable interpretation of Miller's statement is that he did not have drugs yet but would have them in a little bit. This shows that he had an intent to sell. True, Miller didn't explicitly reference "drugs." But

---

[1] At first, the woman's statement was inaudible and the district court was inclined to exclude the video for that reason alone. But eventually, the government solved that problem by enhancing the volume so that the jurors could hear the woman's statement while wearing headphones. To the extent the statement was still a bit difficult to understand, the incomprehensible portion was not so "substantial" as to render the entire recording "untrustworthy." *United States v. Wilkinson*, 53 F.3d 757, 761 (6th Cir. 1995) (cleaned up).

the jury was free to interpret the statement in context. And the context here included the fact that Miller made the statement at the same location and just a few days before he possessed large quantities of drugs.

*Second*, the video was properly authenticated. A recording may be admitted if the district court is "satisfied that the recording is accurate, authentic, and generally trustworthy." *United States v. DeJohn*, 368 F.3d 533, 542 (6th Cir. 2004) (cleaned up). This can be established either through "a chain of custody" or "other testimony [that] establish[es] the accuracy and trustworthiness of the evidence." *Id.* (cleaned up).

Here, the government provided both. An agent testified that he downloaded the video directly from Miller's phone (complete with date and time information). He then entered the video in the government's forensic system. What's more, Miller himself was clearly pictured in the video recording. Thus, the district court did not abuse its discretion by finding the video to be trustworthy and accurate.

*Third*, the video was not substantially more prejudicial than probative. (As noted, we analyze this issue with deference to the district court. *Young*, 847 F.3d at 349.)

What does Miller say was the unfair prejudice here? That the jury might have taken the video for *more* than it was worth. He points out (correctly) that the video provides no context for his conversation with the mystery woman. So while they might have been talking about drugs, they also might have been talking about something else entirely. But Miller argues that the jury might not have realized this—they might have assumed that because the video was being shown in a drug case, Miller *must* have been talking about drugs.

Yet here again, the jury was capable of drawing different conclusions. That they may have drawn one plausible conclusion over another does not render the evidence inadmissible. The jury

could have disregarded Miller's statement if they believed that he was talking about something other than drugs. Or they may have believed, based on the timing, context, location, and phrasing, that Miller *was* talking about drugs. In any case, the district court here again provided a limiting instruction to prevent the jury from drawing unduly broad conclusions from this evidence.

In sum, the district court did not err in admitting the selfie video.

*Sufficiency of the Evidence.* Miller next argues that there was not enough evidence to convict him. In other words, Miller asks us to unwind the jury's guilty verdict. Doing so is no minor task—we must conclude that *no* rational juror could have convicted Miller, even taking the facts in the light most favorable to the government and making all credibility judgments "in the jury's favor." *United States v. Washington,* 702 F.3d 886, 891 (6th Cir. 2012).

Miller has not met this heavy burden. The jury heard from seven government witnesses over a period of four days. (The defense did not put on any evidence.) And those witnesses offered ample evidence to support Miller's convictions on both counts.

*First*, the drug charge. Again, the jury heard that police discovered multiple bags of drugs, a loaded handgun, and digital scales in Miller's car—right after Miller exited the car. It heard that Miller earlier participated in an apparent drug sale in the very same location. And it heard (from an expert witness) that the amount of cocaine in Miller's car—about 125 grams—indicated an intent to traffic. Indeed, the expert explained, that amount of cocaine was worth about $12,000 on the street and weighed as much as a baseball. An ordinary amount for personal use would be about one gram—over a hundred times less than what Miller had. What's more, the cocaine was pressed, suggesting that it had been prepared for distribution.

*Second*, the firearm count. The jury heard that a loaded handgun was found in the center console of Miller's car, where most of the drugs were also located. Thus, the gun was both loaded

and in very close proximity to the drugs. As the expert witness explained, those are telltale signs that a gun is being used for drug trafficking. On top of that, the gun was not legally registered to Miller—yet another sign it was being used for an illegal purpose. *See United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001).

In all, the jury had enough evidence to convict Miller.

*Sentencing.* The district court sentenced Miller to 72 months and one day of imprisonment plus four years of supervised release. Miller challenges that sentence as substantively unreasonable.

He faces an uphill battle. The district court imposed a sentence *below* what the sentencing guidelines recommended. When a sentence is *within* the guidelines, we presume that the sentence is reasonable. *See United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008). Here, for a sentence below the guidelines, Miller's burden is "even more demanding." *Id.*

Miller's arguments focus on his personal traits. He notes that he was young at the time of the offense, was a good father, was gainfully employed, and had never served a lengthy prison sentence before. All fair points. But the district court considered them and weighed them in Miller's favor at sentencing. The district court also considered other factors weighing *against* a shorter sentence—for example, that this was a very serious offense and that it occurred near an elementary school (putting children at risk). The district court also considered whether the sentence would promote respect for the law, justly punish the crime, protect the public, and avoid unwarranted sentencing disparities.

In the end, the district court gave Miller a sentence *below* the guidelines because it believed Miller was a "bright young man" who could "stay on the right track." R. 180, Pg. ID 1471. Miller has not shown that the district court abused its discretion by not selecting an even lower sentence.

We affirm.