NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0569n.06

No. 17-4294

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Nov 09, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE |
| | ) | NORTHERN DISTRICT OF |
| TIMOTHY S. WORKMAN, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE: GIBBONS, SUTTON, and McKEAGUE, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** On September 30, 2013, police officers executed a search warrant on the residence of Timothy Workman, a convicted felon, and seized six firearms and various ammunition. Workman was indicted for being a felon in possession of a firearm (Count 1) and ammunition (Count 2) in violation of 18 U.S.C. § 922(g)(1). A jury convicted Workman on both counts, and the district court sentenced him to time served.

On appeal, Workman alleges that the district court erred in denying his motion for judgment of acquittal under Fed. R. Crim. P. 29 and his request for a specific unanimity instruction. He argues that the evidence is insufficient to prove possession because he did not live at the residence. The evidence at trial, however, clearly demonstrated that Workman lived there and possessed the firearms and ammunition. As for his jury-instruction challenge, our precedent squarely forecloses his argument. We find that the district court properly denied his Rule 29 motion and his requested unanimity instruction. Therefore, we affirm his convictions.

I.

On September 30, 2013, police officers obtained a search warrant for Workman's residence as part of an unrelated investigation. Officers verified where Workman lived by consulting numerous records and databases,[1] all of which indicated Workman's residence as 7240 State Route 219, Celina, Ohio. At that address, officers found a house and a workshop used as a mixed martial arts gym and office.

The officers first searched the workshop. In the office, they found numerous personal items and documents belonging to Workman, including photos, a birth certificate, business licenses, and personal checks. The licenses and checks identified Workman's official address as 7240 State Route 219. In and around Workman's office desk, officers discovered two magazine clips, two boxes of Winchester .410 shotgun shells, 16 rounds of .45 caliber ammunition, and a jar full of .22 caliber ammunition. The officers found nothing of evidentiary value in the adjacent gym.

Officers then searched Workman's house, where they found more of Workman's personal items such as clothing, photos, hygiene products, checkbooks, and legal documents. In the living room, officers found a Taurus "Judge" model revolver capable of shooting both .410 and .45 caliber ammunition, and in the kitchen, they discovered a loaded .17 caliber Taurus "Tracker" model revolver. In Workman's bedroom, they found a Taurus gun box and a Bighorn gun safe. Inside the safe were four firearms: 12 gauge Remington "870" model shotgun, .22 caliber Companhia Braziliera De Cartuchoes "715T" model rifle, 20 gauge Savage "Hiawatha" model shotgun, and 20 gauge H&R "Pardner Pump" model shotgun. Officers also found more

---

[1] The officers searched the police department's master name index, Ohio Law Enforcement Gateway, Law Enforcement Automated Data System, Mercer County Auditor's property records, and Ohio Bureau of Motor Vehicles. Additionally, Workman owned five commercial trucks, one passenger vehicle, one motorcycle, and one recreational vehicle, all of which had certificates of registration indicating Workman's address as 7240 State Route 219, Celina, Ohio. Workman's business—Workman Plumbing, Gas Line Services LLC—was registered with the Secretary of State under the same address.

ammunition, Workman's Social Security card, titles to Workman's vehicles, insurance papers in Workman's name, and a lease purporting to rent the house to Workman's ex-girlfriend, Amanda On.[2]

Workman denied living inside the house or that any of the personal items were his. He claimed that, at the time of the search, he was living in a camper nearby and had been for ten months. Officers noted during their search, however, that the camper appeared unoccupied. According to On, Workman would only sleep in the camper occasionally and would still shower and dress in their house on those occasions. On testified that, while they were not dating at the time, Workman stayed overnight at the house three to four times per week. She confirmed that the men's clothing and other personal items found in the house were Workman's.

The government conducted a DNA analysis of the firearms. The results excluded Workman on one but neither excluded nor included Workman on the others. A forensic scientist testified, however, that cleaning the guns could have removed Workman's DNA from them.

Workman denied handling or shooting the guns, but witnesses and phone data established that Workman handled, cleaned, shot, and stored the guns and purchased the ammunition. On testified that Workman shot his guns on their property and stored them in the safe and kitchen drawer.

While On purchased five of the six guns seized, she did so in Workman's presence and upon his advice. On these occasions and others, On also purchased ammunition for Workman. On stated that another gun, the .17 caliber Taurus "Tracker" model revolver, was given to Workman by Mike Wessel during a trip to Arkansas in the summer of 2013. Wessel, a mixed

---

[2] On lived at the house with Workman. On testified that the purported rental agreement was actually for the protection of herself and their son in case "things went bad between" Workman and On. DE 138, Trial Tr. Vol. 1, Page ID 1143.

martial arts fighter who previously trained with Workman, confirmed that he gifted the .17 caliber handgun to Workman during that trip. Wessel also testified that, on this same trip, he saw Workman purchase ammunition.

A data extraction on Workman's cell phone revealed a number of messages discussing guns and ammunition. On identified text messages between Workman and herself in which Workman told her he was "shooting with Scott" and "if [the sale] would have been on guns we would have went." DE 138, Trial Tr. Vol. 1, Page ID 1138–41; Gov't Ex. 71.2. A message dated June 2, 2013 was sent to Mike Wessel and said "thanks for the gun." DE 139, Trial Tr. Vol. 2, Page ID 1276; Gov't Ex. 71.4. That same day, a message was also sent from Workman to a contact named "J. Brawn," which said "I've got a .17 gun" and subsequently clarified it as a "Taurus." *Id.* at 1276–77; Gov't Ex. 71.3.

On April 2, 2014, Workman was indicted in the Northern District of Ohio for being a felon in possession of a firearm (Count 1) and ammunition (Count 2) in violation of 18 U.S.C. § 922(g)(1) on or about September 30, 2013. At trial, Workman made a Rule 29 motion for judgment of acquittal at the close of the government's evidence. Finding "ample evidence to convict in light of [the] elements," the district court denied Workman's motion. DE 139, Trial Tr. Vol. 2, Page ID 1300. The district court later denied Workman's renewed motion for judgment of acquittal at the close of all the evidence.

Workman also moved to exclude a proposed jury instruction regarding unanimity, which would instruct the jury that it need not unanimously agree upon which firearm(s) and ammunition Workman possessed. Instead, Workman asked the court to instruct the jury that it must unanimously agree as to the firearm(s) and ammunition at issue. The district court denied Workman's motion.

The jury found Workman guilty on both counts, and the district court sentenced him to time served.[3] Workman appealed his convictions.

## II.

## A.

Workman challenges the sufficiency of the evidence on his convictions for being a felon in possession of a firearm and ammunition under 18 U.S.C. § 922(g)(1). This court reviews sufficiency-of-the-evidence challenges to a criminal conviction *de novo*. *United States v. Robinson*, 813 F.3d 251, 255 (6th Cir. 2016). However, "[a] defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010) (quoting *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006)). Indeed, there is a "strong presumption in favor of sustaining a jury conviction." *United States v. Peters*, 15 F.3d 540, 544 (6th Cir. 1994). In reviewing a sufficiency-of-the-evidence challenge, the test is "whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007) (citations omitted). *See also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

"Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Blackwell*, 459 F.3d 739, 760 (6th Cir. 2006) (quoting *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)). In reviewing the sufficiency of the evidence, however, this court "must not 'allow the jury's discrediting of the defendant's testimony to make up for a shortfall in the sufficiency of the government's evidence.'" *United States v. Bailey*, 553 F.3d 940, 946 (6th Cir. 2009) (quoting

---

[3] Contemporaneous with the district court proceedings, Workman faced a 40-year prison sentence in Ohio for state crimes. He is now serving that term.

*United States v. Toms*, 136 F.3d 176, 182 (D.C. Cir. 1998)). At the same time, this court cannot itself reweigh the evidence or witness credibility, nor can it substitute its own judgment for the jury's. *Graham*, 622 F.3d at 448.

A conviction for being a felon in possession of a firearm or ammunition requires the government to prove the following: (1) at the time of the offense, the defendant previously had been convicted of a felony offense punishable by imprisonment for more than one year; (2) the defendant knowingly possessed a firearm or ammunition; and (3) the firearm or ammunition previously had been shipped or transported in interstate commerce. 18 U.S.C. § 922(g)(1). The parties stipulated to the first and third elements. Workman's only challenge to the sufficiency of the evidence, then, concerns the second element.

B.

Workman argues that the evidence is insufficient to prove he was in *possession* of the firearms and ammunition. Workman's possession could have been actual or constructive. "Actual or constructive possession is sufficient to give rise to criminal liability under § 922(g)." *United States v. Davis*, 577 F.3d 660, 671 (6th Cir. 2009) (quoting *United States v. Schreane*, 331 F.3d 548, 560 (6th Cir. 2003)). Both may be proven by circumstantial evidence. *Id.*

*Actual Possession*. When the defendant "knowingly has direct physical control over a thing at a given time," actual possession exists. *Bailey*, 553 F.3d at 944 (quoting *United States v. Frederick*, 406 F.3d 754, 765 (6th Cir. 2005)). As such, the government must present evidence that a firearm or ammunition was in the defendant's "immediate possession or control." *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007) (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)). For example, we have found no actual possession where a defendant

did not have a gun on his person at the time of arrest and was not seen holding a gun before he was arrested. *Bailey*, 553 F.3d at 944.

When the police searched Workman's house and workshop, Workman had already been arrested elsewhere on other charges. The officers, then, did not find the firearms and ammunition on or near Workman at the time of arrest. Perhaps the other evidence presented persuaded the jury that Workman was in actual possession. Perhaps not. As noted above, however, actual possession is not necessary when constructive possession can be shown.

*Constructive Possession*. Constructive possession "exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005) (quoting *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998)). "Proof that the person has dominion over the premises where the firearm is located is sufficient to establish constructive possession." *Kincaide*, 145 F.3d at 782 (internal quotation marks and citation omitted). Further, "a jury generally 'is entitled to infer that a person exercises constructive possession over items found in his home.'" *United States v. Tyus*, 379 F. App'x 450, 452 (6th Cir. 2010) (quoting *United States v. Hill*, 142 F.3d 305, 312 (6th Cir. 1998)).

Thus, whether Workman was in constructive possession of the six firearms and ammunition found at 7240 State Route 219 depends largely on whether that was "his home" and whether he had "dominion over" the house and workshop. *See id.*; *Kincaide*, 145 F.3d at 782. Various official records, licenses, and databases listed 7240 State Route 219 as Workman's personal and business address. In addition, the house and office area of the shop contained Workman's personal items, such as clothing, photos, legal documents, checkbooks, birth certificate, and Social Security card. While Workman denied living in the house and claimed

others used his office, On's testimony made clear that Workman stayed in the house at least three to four days per week and that he operated his businesses out of the office. There is ample evidence for a reasonable juror to conclude that Workman lived, worked, and indeed had dominion over the house and office.

Workman maintains on appeal that On lived in the house and owned the firearms. The theory of joint constructive possession, the government's stated theory at trial, makes clear that constructive possession does not require exclusivity or ownership. *See Hadley*, 431 F.3d at 507 (noting that joint, nonexclusive possession is sufficient); *United States v. Saikaly*, 207 F.3d 363, 368 (6th Cir. 2000) (noting that ownership "is irrelevant" to the issue of possession). Despite the purported lease and On's purchase of five of the six firearms, the evidence clearly indicates that Workman, at a minimum, lived at his house part-time with On and had joint control over the items found therein, including the firearms and ammunition. Thus, a reasonable juror could have found Workman in constructive possession.

Workman further argues that even if he did handle or shoot the firearms earlier in 2013—evidenced by the text messages and trial testimony—such instances are too remote to qualify as "[o]n or about September 30, 2013," as alleged in the indictment. DE 1, Indictment, Page ID 1–2. But Workman's argument confuses the tests and proof requirements for actual and constructive possession. Because the evidence is sufficient to prove constructive possession, the timing of previous instances of actual possession is irrelevant.

Lastly, Workman argues that the evidence was insufficient to prove he had the requisite intent to be convicted. While "[t]he charge of being a felon in possession of a firearm generally does not require proof of intent," Workman is correct in that the theory of constructive possession "does require specific intent." *United States v. Newsom*, 452 F.3d 593, 606 (6th Cir. 2006). This

specific intent must be to "exercise dominion and control over an object, either directly or through others." *Hadley*, 431 F.3d at 507 (quoting *Kincaide*, 145 F.3d at 782). Based on the evidence presented, a reasonable juror could have inferred Workman's specific intent to exercise dominion and control over the firearms and ammunition, either directly or through On and others.

Viewing the evidence in the light most favorable to the government and drawing all inferences in favor of the jury's verdict, a reasonable juror could have found that Workman possessed a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Workman failed to meet his burden of showing insufficiency of the evidence.

III.

A.

Workman argues that he was entitled to a specific jury instruction that would require the jurors to unanimously agree upon which firearm(s) and ammunition he possessed. This court "review[s] challenges to a jury instruction for an abuse of discretion." *United States v. Mitchell*, 681 F.3d 867, 876 (6th Cir. 2012) (citing *United States v. Williams*, 612 F.3d 500, 506 (6th Cir. 2010)). The district court "has broad discretion in crafting jury instructions and does not abuse its discretion unless the jury charge 'fails accurately to reflect the law.'" *United States v. Ross*, 502 F.3d 521, 527 (6th Cir. 2007) (quoting *United States v. Layne*, 192 F.3d 556, 574 (6th Cir. 1999)). "An improper instruction requires reversal of the judgment 'only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial.'" *Mitchell*, 681 F.3d at 876 (quoting *United States v. Kuehne*, 547 F.3d 667, 679 (6th Cir. 2008)).

B.

In the final charge, the district court instructed the jury that it "need not unanimously agree as to which firearm [or ammunition] you individually find beyond a reasonable doubt [Workman]

possessed." DE 140, Trial Tr. Vol. 3, Page ID 1422. The district court clarified that each juror must find beyond a reasonable doubt that Workman possessed "at least a firearm" to find him guilty on Count 1 and "at least one of the quantities of ammunition" to find him guilty on Count 2. *Id.* Workman's proposed alternative instruction would have required each juror to agree with all others as to the "same means or methods alleged in the indictment," or which firearm(s) or ammunition Workman specifically possessed. DE 95-1, Proposed Instr., Page ID 524.

In *United States v. DeJohn*, we held "that the particular firearm possessed is not an element of the crime under § 922(g), but instead the means used to satisfy the element of any firearm." 368 F.3d 533, 542 (6th Cir. 2004) (internal quotation marks omitted). We noted that "no unanimity instruction is required where multiple firearms charged in a single count were discovered as part of the same transaction." *Id.* at 540. Such an instruction may be "required only where 'a genuine risk [exists] that the jury is confused or that a conviction may occur as the result of different jurors concluding that a defendant committed different acts.'" *Id.* (alteration in original) (quoting *United States v. Sims*, 975 F.2d 1225, 1241 (6th Cir. 1992)). Whether this risk exists is the "touchstone" of the unanimity-instruction analysis. *Sims*, 975 F.2d at 1240–41.

Workman argues that "different jurors could and likely did believe that the evidence led to different conclusions" regarding which firearm(s) and ammunition he possessed. CA6 R. 29, Appellant Br., at 24. But *DeJohn* requires the jury to unanimously agree upon the act by which the defendant possesses "any firearm," not which firearm of several was possessed. 368 F.3d at 542. The evidence presented at trial was such that a reasonable juror could find that Workman lived and exercised control over the house and shop, establishing constructive possession. All that was required to satisfy the second element of § 922(g)(1), then, was that Workman's constructive possession—the act—extended to any firearm or ammunition listed in the indictment. As such,

there was no risk a conviction would result from different jurors concluding that Workman committed different acts when the "act" necessary for conviction was possession of "any" firearm or ammunition.

We conclude that the district court did not abuse its discretion in instructing the jury.

IV.

For the foregoing reasons, we affirm Workman's convictions for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1).